STATE OF MINNESOTA v. KRISTIAN KORTGAARD.[1]

July 5, 1895.

Nos. 9516—(76).

62 7
81 184

**Embezzlement by Bank Officer—Indictment—Evidence.**

"In any prosecution for the offense of embezzling the money * * * of any person by a clerk, agent or servant of such person, it shall be sufficient to allege generally in the indictment an embezzlement of money to a certain amount, without specifying any particulars of such embezzlement, and on the trial evidence may be given of any such embezzlement committed within six months next after the time stated in the indictment." G. S. 1894, § 7262. *Held*, that this section is applicable to bank officers indicted for embezzlement or statutory larceny under the Penal Code (§ 415, subd. 2; G. S. 1894, § 6709, subd. 2).

**Same—Evidence of Subsequent Embezzlements.**

Also, that the state may introduce evidence, in support of the substantive offense charged, of an act of embezzlement committed on the date alleged in the indictment, and also of any other act of embezzlement committed within six months thereafter.

**Same—Possession, Custody, and Control.**

*Held*, also, that the evidence in this case showed that the defendant had such possession, custody, and control of the funds of the bank that the appropriation of them by him to his own use with intent to deprive the bank of its property would constitute embezzlement or statutory larceny. If the position or employment of an officer of a bank gives him a superior or a joint and concurrent possession, custody, or control of the bank funds with subordinate officers or agents of the bank, it constitutes such possession, custody, or control as will render the appropriation of the funds to his own use, with the intent aforesaid, embezzlement or statutory larceny.

**Same—Loan or Overdraft.**

If a bank officer appropriates to his own use the funds of the bank intrusted to his custody, with intent to deprive the bank of its property, it is none the less embezzlement because done under the guise or form of a loan to himself or an overdraft of his account.

[1] Reported in 64 N. W. 51.

**Intent.**

> Where an action is in itself unlawful, the law will presume a criminal intent from the intentional commission of the act.

**Charge Considered.**

> Certain parts of the charge considered, and *held* not to contain prejudicial error.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., denying a motion for a new trial. Affirmed.

The part of the charge referred to in the opinion, under the discussion of the ninth assignment of error, and found in folios 135 to 137 of the paper book, is as follows:

"There isn't any such taking of notes in this case. He only took up notes and substituted other notes for them; but if you find from the evidence that there was no such intent at the time that the original notes were negotiated, and the defendant received money, but at the time that he substituted these notes for the money which he had received from the prior notes, he intended then to defraud the bank of this amount of money, then you are justified in finding him guilty of embezzling the amounts named represented by these two ten thousand dollar notes. The embezzlement or guilt attaches when the intent to defraud is made. If you find that the intent, if there was such an intent, was formed between the 6th day of April and the six months thereafter, then the defendant would be guilty of embezzling the amount of these two notes; if you should find that at the time the original loans were made, he then intended to defraud the bank and embezzle the property, it would be without and not within the time limited by the statute in which embezzlement might be proven."

*L. R. Thian* and *F. B. Hart*, for appellant.

*H. W. Childs*, Attorney General, *F. M. Nye*, County Attorney, and *James A. Peterson*, Assistant County Attorney, for the State.

MITCHELL, J.    The defendant was indicted, under subdivision 2, § 415, of the Penal Code (G. S. 1894, § 6709, subd. 2), for embezzling $23,000 of the money of the State Bank of Minneapolis.    The alleged embezzlement was charged in the indictment to have been committed April 6, 1893.    The state served a bill of particulars, specifying the items claimed to have been embezzled as follows:    April 6,

1893, $10,000; April 28, 1893, $10,000; June 10, 1893, $3,000,—total, $23,000. A trial resulted in a verdict of guilty as charged, and that the amount embezzled was $13,000. Upon a motion for a new trial, the court held that the evidence, was not sufficient to justify a conviction for embezzling any sum in excess of $3,000, but that the evidence was sufficient to justify a conviction of embezzling the $3,-000 specified in the bill of particulars as having been taken June 10, 1893, and therefore denied a new trial, as the error of the jury as to the amount embezzled was error without prejudice, the difference in amount being immaterial, as it would not affect the grade of the offense.

1. Upon the trial, the state introduced evidence tending to prove that defendant embezzled $10,000 April 6, 1893, the date alleged in the indictment. Thereafter the state was permitted, against the objection and exception of defendant, to introduce evidence, in support of the substantive offense charged in the indictment, tending to prove the further embezzlement by defendant of $10,000 on April 28, 1893, and of $3,000 on June 10, 1893. The state claimed the right to introduce this evidence under G. S. 1894, § 7262, which provides that "in any prosecution for the offense of embezzling the money * * * of any person, by a clerk, agent or servant of such person, it shall be sufficient to allege generally in the indictment an embezzlement of money to a certain amount, without specifying any particulars of such embezzlement, and on the trial evidence may be given of any such embezzlement committed within six months next after the time stated in the indictment."

The defendant was president of the bank whose funds he was alleged to have embezzled, and the contention of his counsel is that this statute is not applicable to bank officers. His argument is that we borrowed this statute from the state of Massachusetts in 1851; that prior to that time it had been held by the courts of that state, in Commonwealth v. Wyman, 8 Metc. 247, that its provisions were inapplicable to bank officers, and that it must be assumed that, in adopting it, we also adopted the judicial construction already given to it in that state.

The learned counsel is somewhat in error as to the history of this statute. As a matter of fact, we inherited it, or at least adopted it, from Wisconsin, of which we were formerly a part. Wisconsin

presumably adopted it from Michigan, of which it was once a part. Michigan probably adopted it, either mediately or immediately, from Massachusetts, which, so far as we are advised, was the first state to enact such a statute.    An examination of the decision of the court in Commonwealth v. Wyman will show that it was not made upon this section standing alone, or upon the ground that there was, anything either in the language or in the purpose of the statute,, considered by itself, which required any such construction.    In fact, the court impliedly admits that, construed by itself, it would apply to officers of incorporated companies including banks; but they arrived at the legislative intent from the position which the sec-, tion occupied in the statutes, and from the existence of other provisions expressly and solely applicable to embezzlement by bank officers.

Hence, whatever might have been urged in favor of this construction, did we retain the special and express provisions relating to embezzlement by bank officers corresponding to those of Massachusetts relating to the same subject, is deprived of all force in view of the fact that these special provisions have all been repealed, and that subdivision 2, § 415, of the Penal Code (G. S. 1894, § 6709, subd. 2) has been enacted, which applies to all cases of embezzlement, and wipes out all distinctions which may have previously existed between embezzlements by officers of banks and by any other officer or agent.    By thus doing away with all such distinctions, and enacting a single provision covering all embezzlements, and at the same time retaining in full force G. S. 1894, § 7262, the conclusion seems to us irresistible that the legislative intent was that this section should apply alike to all cases falling within the provisions of subdivision 2, § 415, of the Penal Code (G. S. 1894, § 6709, subd. 2). Its language is broad enough to include all such cases, and, when its purpose is considered, embezzlement by bank or other corporate officers is clearly within the mischief intended to be remedied. While all agents are not officers, yet all officers are agents.

2. It is further contended, however, that, even if the statute is applicable, yet the date alleged in the indictment is not a part of, or within, the six months.    This contention is based upon the use of the words "next after" in the statute.    If we correctly understand counsel, his position is that if the state desires to avail itself

of the provisions of this section it cannot introduce evidence, in support of the substantive offense, of an act of embezzlement committed on the day alleged in the indictment; that if it does so, it is confined to evidence of embezzlement committed on that particular day. To illustrate by the present case, when the date alleged in the indictment is April 6, counsel's contention is that if the state introduces evidence of embezzlement committed on that day, it is limited in its proof of the substantive offense to acts committed on that particular date; that, if it desires to avail itself of the statute, it cannot prove any act of embezzlement committed earlier than April 7.

We are of opinion that such a construction of the statute is unreasonable, and not in accordance with the legislative intent. If correct, then, in order to make the statute applicable, the state would be required to allege a date in the indictment at least one day earlier than the date of the first act of embezzlement of which it intended to offer any proof. Our construction of the statute is that it permits the state to introduce evidence of an act of embezzlement committed on the day stated in the indictment, and of any other acts of embezzlement committed within six months next after that date. If the state had first introduced evidence, in support of the substantive offense, of an embezzlement committed before the time stated in the indictment and then introduced evidence of embezzlement committed within six months after the time stated in the indictment, thus perhaps extending the range of inquiry to a period exceeding six months, a very different question would have been presented.

3. It is further contended that the evidence failed to show that the defendant had any such possession, custody, or control of the funds of the bank that the appropriation of them by him to his own use would constitute embezzlement or statutory larceny, it being an essential element of this offense that the property embezzled must be at the time in the lawful possession, custody, or control of the defendant as bailee, agent, or officer of the owner.

Much of counsel's argument in support of this contention proceeds upon the proposition that the cashier of a bank is the officer who has the exclusive possession and custody of its funds, that the president has by virtue of his office no such possession or control,

but is merely a member of the board of directors, and, although expected to exercise a general supervision of the affairs of the bank, has no more custody or control of its funds than any other director. But the question is not what custody or control over the funds of banks have their presidents generally, merely by virtue of their office, but what custody or control did this defendant in fact have over the funds of this bank. If he in fact had the lawful custody or control over them, whether in the capacity of president or otherwise, and appropriated them to his own use with intent to deprive or defraud the bank of them, he was guilty of embezzlement. If his position or employment gave to defendant a superior or joint and concurrent possession, custody, or control with subordinate employés or agents of the bank, that would constitute such possession, custody, or control as would satisfy the requirements of the statute.

Even assuming that the bill of exceptions contains all the evidence on the subject, it is ample. It tended to show that he was the managing officer of the bank, and had general direction and control of its affairs; that it had no discount committee; that he directed and controlled the making of all loans and discounts; that he had made loans for the bank to himself and to the numerous corporations of which he was a member and the principal stockholder to the amount of between $300,000 and $400,000, upon which little had ever been realized, and all of which was of little value. In short, the evidence tends to show that he was permitted to have practically absolute control of the bank funds and dispose of them as he saw fit,—a power which he would seem to have used for his own individual benefit, and, to say the least of it, with a reckless disregard of the interests of the bank.

4. The remaining assignments of error relate to the charge of the court. To correctly construe the portions excepted to, they must be considered in connection with the remainder of the charge, and in the light of the evidence to which they refer, keeping in mind meanwhile the exact nature of the offense for which defendant was indicted.

The offense differs from common-law larceny in that the property must have already been in the lawful possession or control of the accused under or by virtue of some employment, trust, or agency under and with the consent of the owner; while common-law larceny

involves the element of an unlawful taking of the property from the actual or constructive possession of the owner. The two essential elements of the offense are: First, the appropriation of the property by the bailee, agent, or officer to his own use, or to that of some other person than the true owner; second, such appropriation must have been made with the intent to deprive or defraud the true owner of the property, or of the use or benefit thereof. If the agent or officer does with the property, lawfully in his possession, custody, or control, what a person must intend to do with property unlawfully taken by him in order to be guilty of common-law larceny, then such agent or officer is guilty of statutory larceny, formerly called embezzlement. In other words, to constitute the statutory crime, the appropriation of the property must be made with the same intent to deprive the owner of it with which the taking must be done to constitute larceny at common law. But if this intent exists, it is wholly immaterial under what form or cover the property is thus appropriated, whether under the form of a loan or overdraft, or by going into the bank vaults and taking so much money.

Many of defendant's exceptions to the charge were so general or indefinite as not sufficiently to specify the part of the charge or the particular legal proposition excepted to, and others did not accurately state what the court did in fact charge. Some of the assignments of error are subject to the same objection, while others do not conform either to the exceptions or to the charge, and the argument of counsel discusses the charge at length without exact regard either to the assignments of error or to the exceptions. Consequently it has been a labor of some difficulty to ascertain just what portions of the charge are before us for review. Only those portions which were properly excepted to and are sufficiently assigned as error can be considered.

The seventh assignment of error is entirely too general and indefinite, and cannot be considered. It is that "the court erred in its instructions to the jury bearing upon the question of intent," without specifying the particular part of the charge or the particular legal proposition objected to.

The eighth assignment of error is that "the court erred in instructing the jury that defendant's acts as president of the bank must have been such as to have been beneficial to the bank, enabling it to pay

depositors, etc.  P. B. folios 111 to 124." The only exception to which this assignment can refer is as follows: "The defendant further excepts to that part of the charge where the court stated to the jury that defendant's acts must be such as to be beneficial to the bank, enabling it to pay depositors; that every man at the time of his act contemplates the consequence of the results."   This is not a good exception, for the reason that the portion of the charge purporting to be excepted to embraces two distinct propositions, the last of which, although not stated in the best form, is not objectionable.    Main v. Oien, 47 Minn. 89, 49 N. W. 523.    But, even if the insufficiency of the exception was to be overlooked, and the 13 folios of the charge assigned as error examined, it will be found that it nowhere contains any such instruction as stated in the assignment of error or in the first part of the exception.

The ninth assignment of error is that "the court erred in instructing the jury that the intent might have been formed subsequent to the commission of the act, and that if so formed the defendant would be guilty.  P. B. fol. 137."  This does not accurately state what the court did charge on the subject, but, as the exception to this part of the charge is sufficient, we are not disposed to be hypercritical as to the assignment of error.    This part of the charge will be found in folios 135 to 137 of the paper book.    It will be kept in mind that the bill of particulars contained three separate and distinct items, to wit, two of $10,000 each, and one of $3,000,—each of which was not only an entirely independent and distinct transaction, but also, under the evidence, indivisible, so that by no possibility could the jury have found, or understood that they could have found, the defendant guilty of embezzling a part of either of the $10,000 items, and not of the whole of it.    The instructions here excepted to had exclusive reference to the two $10,000 items.    It appeared from the evidence that these two transactions of April 6 and 28 consisted of defendant's taking up his notes of $10,000 each, given for prior "loans," and giving renewal notes for like amounts in place of them, the money represented by them having been in fact obtained and appropriated by defendant at the respective dates of the original notes.    It was in that connection that the court instructed the jury, in substance, that even if they found that the defendant had no intention of defrauding the bank out of the money when he re-

ceived the money and executed the original notes, yet if they found that he had formed such intention at the times he gave the renewal notes, then they would be justified in finding him guilty of embezzling the amounts represented by these two $10,000 notes. This was undoubtedly error, but it was error without prejudice, because it could by no possibility have affected the finding of the jury upon the $3,000 item, upon which the conviction now exclusively rests, and with reference to which the court then proceeded to give to the jury specific instructions, separate and distinct from those just previously given as to the two $10,000 items.

The tenth assignment of error is that "the court erred in instructing the jury that if the conduct of the defendant reduced the assets of the bank so that it was unable to meet its legitimate obligations, 'the intent to injure or defraud the bank may be conclusively presumed.' P. B. fol. 124." A reference to this part of the record will show that the court did not so charge, at least not in the way which the assignment of error implies. The court had, immediately before this, correctly instructed the jury that "if a loan is made, not in the honest exercise of discretion and not for the supposed advantage of the bank, but in bad faith, for a personal advantage, and with fraudulent intent, it would constitute larceny by the officer so obtaining the money"; but qualified and limited this by adding what is here complained of, preceded by the word "if." Of course, if the defendant appropriated the money of the bank to his own use with the intent to defraud the bank of its property, his act was larceny, whether it left the bank solvent or insolvent. The qualification or limitation was error without prejudice to defendant, because the error was in his favor. The court afterwards explicitly called the attention of the jury to the distinction between merely making irregular, excessive, or reckless loans, which would amount to maladministration only, and not to larceny, and "pretended loans," made in bad faith, for personal advantage, and with fraudulent intent, on the part of the bank officer intrusted with the custody of bank funds.

The eleventh assignment of error is that "the court erred in instructing the jury in reference to defendant's overdrafts; that the law presumed, in making these overdrafts, they were done with the intent to defraud the bank, etc. P. B. fol. 140." This has reference to the $3,000 item. This instruction must be construed in the light of the

evidence, and in connection with the remainder of the court's charge on that subject. The court had instructed the jury that defendant, as an officer of the bank and trustee of its funds, had no authority to issue his checks and have them paid from the funds of the bank, when he had no funds there to pay them, knowing that he had none; that he had no more right to do that than either one of the jury would have if they had an opportunity to go to the bank and take funds belonging to it; and that the law presumes that in making these overdrafts it was done with intent to defraud the bank, and not done for the honest purpose of doing banking business, for the advantage of the bank. This is all of the charge to which the assignment of error applies. It must be remembered that this instruction has reference, not to a case where a stranger to a bank draws his checks upon it when he has no funds to meet it, and where, notwithstanding that fact, the officers of the bank pay the checks, but to a case, as disclosed by the evidence, where the bank officer having supreme and unlimited control and custody of the bank funds draws his own checks on the bank, and pays them, or causes them to be paid, to himself, out of the bank funds, and appropriates the proceeds to his own use, knowing that he has nothing to his credit in the bank. As applied to such a state of facts, we think the charge of the court was both good law and good morals. If the fraudulent intent is not to be presumed from the commission of an unlawful act, it would be very difficult in any case to prove the intent to embezzle on the part of a bank officer who had unlawfully appropriated bank funds to his own use. When an act, in itself indifferent, becomes criminal only when done with a particular intent, the intent must be proved; but when the act is, in itself, unlawful, the criminal intent is presumed from the intentional commission of the act. This rule as to presumption was peculiarly applicable to facts of this case, where the defendant, intrusted apparently with unlimited control of the bank funds, had been for years in the practice, under the form of loans or overdrafts, of appropriating these funds to the use of himself and his corporations to the amount of hundreds of thousands of dollars, in apparent disregard of the interests of the bank.

The twelfth assignment of error is sufficiently covered by what has been said regarding the eleventh. The instructions referred to

amounted to nothing more than that the burden was on the defendant to relieve himself from the presumption referred to, by showing that these overdrafts were not made with intent to defraud or cheat the bank.

The thirteenth assignment of error is too general to be available. If it refers to the instructions of the court considered under the eleventh and twelfth assignments, it is disposed of by what has been already said.

The fourteenth assignment of error is that "the court erred in instructing the jury that defendant's business misfortunes, precipitating reverses, stringency in the money market, etc., would not be considered in determining the case. P. B. fol. 149." After instructing the jury as to the law of the case, the court closed with some general remarks to the effect that the jury must confine themselves to the testimony, and presume the defendant innocent until proved guilty beyond a reasonable doubt, adding: "On the other hand, it is claimed by the defendant that he has been respected by the community here as a business man; that these misfortunes have been brought upon him by reverses, by stringency in the money market, and by the failure of banks and reverses of business men,—all of which you have nothing to do with in considering this case. You will determine it upon the testimony here as disclosed." We see nothing objectionable in these remarks of the court. If the defendant was guilty of appropriating bank funds with intent to deprive the bank of them, the fact that he was unfortunate in the enterprises in which he invested the money, or that subsequent financial reverses rendered him unable to restore the money which he had misappropriated, would not render his prior acts any the less criminal.

In conclusion, while some portions of the charge of the learned judge may not be characterized by his usual clearness and precision, and while other portions may not be specially applicable to the case, yet we find no prejudicial error in it. Taken as a whole, it clearly means, and the jury must have so understood it, that defendant could not be convicted of the crime charged merely because of maladministration of its affairs, as, for example, by making unlawful, irregular, or reckless loans, but that he could only be convicted in case the jury found that he had appropriated the money to his own use with intent to defraud the bank out of it; but that, if

it was appropriated with such intent, the act was none the less· larceny because committed under the form of a loan or overdraft. This comprised the whole law of the case in a nutshell.

We find no error in the rulings of the court as to the admission or exclusion of evidence; and in our opinion, the evidence was sufficient to justify a verdict of guilty of the larceny of $3,000. ·

Order affirmed.