[No. 4579. Decided December 10, 1903.]

THE STATE OF WASHINGTON, *Respondent,* v. H. ST. JOHN DIX, *Appellant.*[1]

CRIMINAL LAW—LARCENY BY EMBEZZLEMENT—CONTINUING OFFENSE—INFORMATION—DUPLICITY. An information charging a bank president with larceny by embezzlement "on the 15th day of August, 1900, and on divers dates and days from thence continuously to the 10th day of January, 1901," of certain moneys and funds, amounting in the aggregate to a specified sum, is not demurrable for duplicity, but charges one continuing crime.

[1]Reported in 74 Pac. 570.

SAME—BILL OF PARTICULARS—DUPLICITY. A bill of particulars is not part of the information and even if it shows an intent to prove more than one crime, it does not render the information demurrable.

SAME. A bill of particulars showing that on various dates, specific sums were intrusted to the president of a bank, and that on a certain date thereafter he failed to account for the respective sums or any part thereof, does not indicate that more than one offense was intended to be proved under an information charging the embezzlement of the aggregate amount on divers days and dates continuously during the period specified.

EMBEZZLEMENT—CONSPIRACY BETWEEN OFFICERS OF BANK—SUFFICIENCY OF PROOF. Where letters, books and declarations of the accused's associates are received under a promise to prove a conspiracy to embezzle the funds of a bank, there is sufficient prima facie evidence of the conspiracy to make the testimony admissible where it appears that none of the parties had any means, that the banks purchased by them were insolvent to the knowledge of all, that they used the deposits of one to pay the debts contracted for the purchase of the others, and solicited deposits representing that the banks were solvent, that the money was taken by defendant with the knowledge of his associates, and the funds were embezzled when the opportunity arose, and accused's associates were in communication with him while he was a fugitive from justice.

SAME—EVIDENCE OF INSOLVENCY OF THE BANK. In a prosecution against a bank president for the embezzlement of the funds of the bank, evidence of the receipt of deposits after the accused left the state, and of the closing of the bank without paying any of the depositors, is properly admitted as tending to show the insolvency of the bank at the time the money was taken, and the deceit practiced upon the depositors.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered August 25, 1902, upon a trial and conviction of the crime of larceny by embezzlement. Affirmed.

*Robert H. Lindsay* and *Thos. D. J. Healy,* for appellant.

*Parker Ellis, John B. Hart,* and *A. E. Mead,* for respondent.

MOUNT, J.—Appellant was convicted of the crime of embezzling funds belonging to the Scandinavian-American Bank of New Whatcom, of which bank he was president. It appears that, prior to his connection with the bank named, the appellant was insolvent, but he managed to purchase a controlling interest in the stock of the bank with borrowed money. After he had acquired his interest and was made president thereof, he repaid the borrowed money from funds of the bank, and subsequently took large sums from the bank and placed therein his unsecured promissory notes instead of the money taken. This money, placed to his credit in the bank from time to time, was drawn out daily, covering a period of two or three months, upon personal checks. It seems the bank was insolvent at the time he obtained control thereof, and, shortly after the money was drawn out, appellant left the state of Washington; and, some time thereafter, by diligent search, was located and apprehended in London, England, from whence he was brought here upon extradition, and tried and convicted. Shortly after appellant left the state, the bank closed its doors, without funds except about $130 in money, and furniture and fixtures to the value of about $3,000.

Numerous errors are alleged on this appeal, but they are argued under three heads, viz.: (1 ) that the court erred in overruling the demurrer to the information; (2) in admitting declarations of appellant's associates claimed by the state to have been co-conspirators; and (3) in admitting evidence of deposits made in the bank after appellant had left the state.

(1) The charging part of the information is as follows:

"Then and there being he, the said H. St. John Dix . . . on the 15th day of August, 1900, in the county of Whatcom and in the state of Washington, and on divers

dates and days from thence continuously to the 10th day of January, A. D. 1901, while then and there acting as the president and manager of the Scandinavian-American Bank, a banking corporation organized, existing, and doing business as such in the city of Whatcom, Whatcom county, state of Washington, during the period herein mentioned, did then and there unlawfully, fraudulently, wrongfully, and feloniously convert to his own use certain moneys and funds of said banking corporation, then and there intrusted to him by the said Scandinavian-American Bank, and has failed to account to the said Scandinavian-American Bank for such moneys or funds so intrusted to him, the amount so wrongfully, unlawfully, fraudulently, and feloniously converted to his own use by the said H. St. John Dix . . . amounting in the aggregate to the sum of twenty-two thousand seven hundred and ninety dollars ($22,790.00), being of the value of twenty-two thousand seven hundred and ninety dollars ($22,790.00), and being then and there the money and personal property of the Scandinavian-American Bank; he, the said H. St. John Dix, . . . did then and there wrongfully, fraudulently, and feloniously convert said money and funds of said bank to his own use and benefit, with the intent then and there to defraud the said Scandinavian-American Bank of the same; he, the said H. St. John Dix, . . . thereby committing the crime of larceny by embezzlement as the same is defined by statute of the state of Washington; and so the prosecuting attorney as aforesaid doth accuse the said H. St. John Dix . . . of the crime of larceny by embezzlement, by taking, stealing, and carrying away and converting to his own use the property of the said Scandinavian-American Bank, in the amount and of the value as aforesaid, all of which is contrary," etc.

To this information appellant filed a demurrer upon the ground of duplicity. This demurrer was overruled, whereupon a bill of particulars was demanded, showing the several amounts and dates of the embezzlement mentioned in the information, and the court ordered that such bill

of particulars be furnished. The prosecution thereupon furnished a bill of particulars, the material part of which is as follows:

"Comes now the plaintiff and, complying with the order of the above entitled court in the above entitled cause wherein said court, on motion of the defendant herein, required this plaintiff to furnish to the defendant or his said attorney a bill of particulars showing at what dates and what several amounts the defendant is charged by the information herein with embezzling funds and moneys of the Scandinavian-American Bank, states as follows: Plaintiff will claim at said trial, and will introduce documentary and other testimony to the effect, that the Scandinavian-American Bank intrusted to the above named defendant, on the dates herein mentioned, the respective amounts stated herein, that is to say: On September 8th, 1900, the said Scandinavian-American Bank intrusted to the said defendant the sum of $4000, or the proceeds of a certain promissory note, due on demand, dated September 8th, 1900, for the principal sum of $4000. On September 4th, 1900, the said Scandinavian-American Bank intrusted to the said defendant the sum of $6000, or the proceeds of a certain promissory note, due on demand, dated September 4th, 1900, for the principal sum of $6000. On September 12th, 1900, the said Scandinavian-American Bank intrusted to said defendant the sum of $2500, or the proceeds of a certain promissory note, due on demand, dated September 12th, 1900, for the principal sum of $2500. On October 31st, 1900, the said Scandinavian-American Bank intrusted to said defendant the sum of $2600, or the proceeds of a certain promissory note, due on demand, dated October 31st, 1900. On August 15th, 1900, the said Scandinavian-American Bank intrusted to said defendant the sum of $2300, or the proceeds of a certain promissory note, due on demand, dated August 15th, 1900, for the principal sum of $2300. On October 13th, 1900, the said Scandinavian-American Bank intrusted to said defendant the sum of $500, or the proceeds of a certain promissory

note, due on demand, dated October 13th, 1900, for the principal sum of $500. On October 2d, 1900, the said Scandinavian-American Bank intrusted to said defendant the sum of $1750, or the proceeds of a certain promissory note, due on demand, dated October 2nd, 1900, for the principal sum of $1750. That on September 4th, 1900, the said Scandinavian-American Bank intrusted to the defendant herein the sum of $4000, or the proceeds of a certain certificate of deposit issued by the cashier of said bank of said date, for the sum of $4000 indorsed by the defendant herein. On September 4th, 1900, said Scandinavian-American Bank intrusted to the defendant herein the sum of $2000, or the proceeds of a certain certificate of deposit issued by the cashier of said bank on said date, for the sum of $2000, indorsed by the defendant herein. On October 22nd, 1900, the said Scandinavian-American Bank intrusted to the defendant herein the sum of $2020, said sum being the proceeds of a certain draft dated October 22nd, 1900, for said sum of $2020, signed by said defendant and payable to the First National Bank of Seattle. That the said defendant did, on or about the 7th day of January, A. D. 1901, fail to account to the Scandinavian-American Bank for said respective sums herein mentioned, or any portion thereof."

Appellant thereupon renewed his demurrer, which was also denied. It is claimed by appellant that the information upon its face is duplicitous, and, when taken in connection with the bill of particulars, charges ten separate and distinct embezzlements, each of which is independent of the others and susceptible of proof, if the charge be true. The information upon its face charges that the defendant "*on the 15th day of August, A. D. 1900, . . . and on divers dates and days from thence continuously to the 10th day of January, 1901, . . .* did then and there . . . convert to his own use certain moneys and funds . . . and has failed to account for such moneys

and funds, . . . amounting in the aggregate to $22,-
790." It is clear that this information charges a continu-
ing offense from the 15th day of August, 1900, to the 10th
day of January, 1901.

Appellant apparently concedes that there is a class of
cases, like *State v. Reinhart,* 26 Or. 466, 38 Pac. 822;
*Brown v. State,* 18 Ohio St. 496; *Jackson v. State,* 76 Ga.
551; and *Ker v. People,* 110 Ill. 627, 51 Am. Rep. 706,
where the circumstances are such that, unless the prosecu-
tion is allowed to aggregate a continued systematic pecula-
tion on the part of an agent or employee, it might be im-
possible to secure a conviction, because the separate acts
may not be susceptible of direct proof, and therefore proof
of such continued taking is permitted; but it is contended
that even in those cases but one offense must be alleged on
an express date, and, when the exigencies of the case de-
mand it on the trial, proof of a continuing offense may be
made. His contention therefore must be that, if the in-
formation in this case had charged the crime to have been
committed on August 15, 1900, the evidence showing a
continuing peculation might have been received to prove
the charge; but since the information charges the facts
of a taking continuously from the 15th day of August, 1900,
to the 10th day of January, 1901, it is therefore subject
to duplicity. Such a result we think does not follow. If
proof of a continuing act is sufficient to sustain a convic-
tion for an act alleged upon a given date, it certainly fol-
lows that a continuing act may be alleged. The allegation
of facts constituting the crime need be no stronger than
the proof of the facts constituting such crime. For this
reason we think that, under the rule stated in the authori-
ties above cited, the information charges but one continu-
ing crime and is sufficient.

Appellant further contends that the information, taken in connection with the bill of particulars, states ten separate and distinct offenses. "The bill of particulars is not a part of the information." *People v. McKinney,* 10 Mich. 54.

"It is quite generally if not universally held by the courts that the effect of a bill of particulars is to limit the claim and restrict the proof to the very matters therein specified." *Spokane & I. Lumber Co. v. Loy,* 21 Wash. 501, 509, 58 Pac. 672, 60 Pac. 1119.

"The sole office of the bill of particulars is to give the adverse party information which the pleadings by reason of their generality do not give." 3 Enc. Plead. & Prac. 527.

If the information charges but one crime, and the bill of particulars furnished indicates that the prosecution will attempt to prove at the trial a number of independent crimes, it does not follow that the information is subject to the objection of duplicity. The fact that the prosecution gives notice by a bill of particulars that it will attempt to prove other offenses, does not authorize the trial court to allow such evidence to be introduced at the trial; and, if such evidence were introduced, the fact that a bill of particulars was filed would not cure an error of that kind. Therefore, even if the bill of particulars in this case showed that the prosecution intended to rely upon ten separate offenses and introduce evidence thereof, that fact would not necessarily require the court to sustain a demurrer to the information for duplicity.

However, the bill of particulars in this case does not, in our opinion, indicate that more than one offense was intended to be proven. The bill of particulars states that on certain named dates the Scandinavian-American Bank intrusted to defendant certain sums of money, aggregat-

ing in amount more than $22,000. The ten sums making up this aggregate were intrusted at ten different times. The bill of particulars does not state that these different sums were embezzled at the different times named, when they were intrusted; but it does state that, on or about the 7th day of January, 1901, the defendant failed to account for the respective sums mentioned. There is nothing in the bill of particulars to show that the first, or any subsequent item, was embezzled at the time it was received. Nor is there any allegation in the information that any particular item was embezzled at a given time, but the allegation is that, *on the 15th day of August,* 1900, *and on divers days and dates from thence continuously to January* 10, 1901, the embezzlement took place. The clear and unequivocal statements, both of the information and of the bill of particulars, are that the funds were intrusted at different times and were converted continuously thereafter until the 10th day of January, and that the whole of these was one transaction. The demurrers were, we think, properly overruled. The evidence shows, that the money was taken by the appellant; that it was passed to his individual credit in the bank, and that it was drawn out by individual checks daily, and frequently several checks per day, until it was exhausted; that, in place of the money, the appellant, acting as president and in control of the funds, left his unsecured promissory notes and drafts; and that these securities were carried as cash on hand by the cashier to the extent of at least $24,000.

(2) It is next argued that the court erred in receiving in evidence certain declarations and writings of the associates of appellant in his banking business, which declarations and writings were made when appellant was not present. This evidence was admitted by the learned trial

court under a promise that the prosecution would prove a conspiracy between appellant and these associates to embezzle the funds of the bank. It is now insisted that no such conspiracy was proved.

After carefully reading all the evidence in the case, we think there was sufficient evidence to show, prima facie, such conspiracy between appellant and these associates. None of them had any means. The banks which they purchased were insolvent; especially so was the Scandinavian-American Bank. They all knew this fact. They so manipulated the funds of this bank as to buy others, using the deposits of each to pay the debts contracted for the purchase of the others. Each of these associates was soliciting deposits, representing that the banks were solvent, when he knew they were not. When the banks were in their control, the appellant took the money with the knowledge of his associates, and left the state ostensibly for the purpose of raising funds for the use of these banks. While appellant was out of the state, he was in communication with these associates. He was apprehended in London, England, and while there was in company with some of the same associates. While it is not shown directly that the bank and the funds thereof were acquired by appellant and his associates for the purpose of taking the money therefrom, yet it is shown that, as soon as the opportunity came, appellant did take the money with the knowledge of his associates, and converted it. There are many other circumstances in the evidence tending to show knowledge and community of interest in the whole transaction. There was no evidence whatever offered at the trial on the part of the appellant. From the facts above stated, we think the evidence sufficiently showed a conspiracy to entitle the declarations, letters, and books of these associates to remain in evidence

as against appellant. Underhill, Criminal Evidence, §
491; 1 Greenleaf, Evidence, § 111; *Card v. State,* 109 Ind.
415, 9 N. E. 591; *Johnson v. State,* 29 Ala. 62, 65 Am.
Dec. 383; *State v. McCann,* 16 Wash. 249, 47 Pac. 443,
49 Pac. 216.

(3.) It is next claimed as error that the trial court per-
mitted evidence to the effect that the bank received deposits
after appellant had left the state, that none of the de-
positors received back any of their money, and that the
bank shortly after receiving these deposits closed its doors.
These facts were material, we think, as tending to show the
insolvency of the bank at the time appellant took the
money, and for the further reason that they tended to show
a course of dealing intended to deceive the patrons of the
bank. This evidence was therefore not error.

Finding no error in the record, the judgment is affirmed.

FULLERTON, C. J., and DUNBAR, ANDERS, and HADLEY,
JJ., concur.