## STATE, Respondent, v. K. S. PETERS and FRANK G. LECHLEITER, Appellants.

[253 Pac. 842.]

CRIMINAL LAW—ASSIGNMENTS NOT REVIEWABLE WITHOUT EXCEPTIONS TAKEN—EMBEZZLEMENT—CONTINUING OFFENSE—JOINT OFFENSE—DEMURRER TO INFORMATION INSUFFICIENT—INSTRUCTIONS—FRAUDULENT INTENT.

1.  Assignments of error as to ruling on evidence and other matters at the trial, not being supported by exceptions taken, are not reviewable.

2.  To charge a continuing offense of embezzlement, under C. S., sec. 8451, it is not necessary for the information, in addition to the allegations in the nature of a *continuando*, to allege that the series of acts was systematically instituted and carried on, or that the specific separate peculations cannot be identified; either or both of these conditions, if requisite to establish the acts as a continuing offense, being matter of evidence rather than of allegation in the information.

3.  Evidence in embezzlement case *held* sufficient to sustain verdict of guilty on theory of continuing offense.

4.  Verdict of guilty as charged in the information, though separate as to each defendant, and specifying the amount embezzled by each, *held* one of conviction of joint continuing embezzlement, charged in the information.

5.  Special demurrer merely that information does not substantially conform to requirements of C. S., secs. 8825–8827—one of which specifies matters with respect to which information must be certain—and not pointing out the particulars in which information is insufficient, is not sufficient as a demurrer for uncertainty.

6.  Requested instruction that to warrant conviction the evidence must exclude every hypothesis save that of guilt *held* properly refused, both because omitting requirement that such other hypothesis be reasonable and because the evidence was not solely circumstantial.

7.  Instructions merely singling out evidence as proper for jury to consider with all the other evidence, but without comment on its weight or effect, and from which no prejudice appears, *held* no ground for complaint.

8.  Where jury are otherwise fully and repeatedly advised that fraudulent intent must be proved beyond reasonable doubt, omis-

sion of the element of fraudulent intent from instructions on specific phases of the case could not have been prejudicial.

9. Instruction in embezzlement does not tell jury they may infer criminal intent from mere acts of appropriation, where it requires as basis of inference of criminal intent proof beyond reasonable doubt that defendants knowingly converted the funds in the manner charged in the information, which charged the appropriation to have been fraudulent.

10. Words from instruction in embezzlement, that if the acts constituting the appropriation are knowingly or intentionally committed a criminal intent will be presumed, *held* in light of context of that instruction and another on intent, and, in view of instructions defining embezzlement and stating necessary proof, not to have been capable of misleading jury to understand that if taking of money was knowingly and intentionally done, though not done with the consciousness that no right to take it existed, the necessary intent would still be presumed.

11. Where jury were fully instructed on presumption of innocence and necessity of proof beyond a reasonable doubt, such matters were not required to be repeated in other instruction by being injected into various instructions given.

12. Where conversion is otherwise established, demand for return of money claimed to have been embezzled is not necessary.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Appellants were convicted of embezzlement. *Affirmed.*

Homer C. Mills and Roy L. Black, for Appellants.

The information was defective in that it did not substantially conform to the requirements of C. S., secs. 8825,

Publisher's Note.

12. See 9 R. C. L. 1276.

See Criminal Law, 16 C. J., sec. 1568, p. 765, n. 57; sec. 2433, p. 1009, n. 6; sec. 2434, p. 1010, n. 14; sec. 2436, p. 1011, n. 25; sec. 2494, p. 1052, n. 89; sec. 2495, p. 1053, n. 93; sec. 2506, p. 1063, n. 85; 17 C. J., sec. 3337, p. 74, n. 90; sec. 3342, p. 77, n. 34; sec. 3696, p. 344, n. 33.

Embezzlement, 20 C. J., sec. 17, p. 429, n. 31; sec. 67, p. 473, n. 52; sec. 82, p. 486, n. 60; sec. 88, p. 491, n. 92; sec. 92, p. 493, n. 14.

Indictment and Information, 31 C. J., sec. 399, p. 817, n. 87.

8826 and 8827. (7 Ency. Plead. & Prac. 447; *People v. Cohen,* 118 Cal. 74, 50 Pac. 20; *Gates v. Lane,* 44 Cal. 392; *People v. Lanterman,* 9 Cal. App. 674, 100 Pac. 720; *State v. Smith,* 25 Ida. 541, 138 Pac. 1107.)

The information charged more than one offense, contrary to C. S., sec. 8829. (*State v. Bilboa,* 33 Ida. 128, 190 Pac. 248; *State v. Hall,* 33 Ida. 135, 190 Pac. 251; *State v. Cooper,* 35 Ida. 73, 204 Pac. 204.)

The court erred in denying motion of defendants seeking to compel state to elect. (*State v. Dawe,* 31 Ida. 796, 177 Pac. 393.)

It is error to instruct a jury on the subject of embezzlement without incorporating the statutory terms. (C. S., sec. 8450; *People v. Marshall,* 112 Cal. 422, 44 Pac. 718; *People v. Westlake,* 124 Cal. 452, 57 Pac. 465; *People v. Bush,* 65 Cal. 129, 3 Pac. 590; *People v. Wong Ah Ngow,* 54 Cal. 151, 35 Am. Rep. 69.)

Instructions must not invade province of the jury. (*State v. Dunlap,* 40 Ida. 630, 235 Pac. 432.)

The evidence is insufficient to support the verdict. (*Wyatt v. State* (Okl. Cr.), 205 Pac. 195; *People v. Mitchell,* 74 Cal. App. 164, 240 Pac. 36; *People v. Royce,* 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *People v. Ephriam* (Cal. App.), 245 Pac. 769; *State v. Jones,* 25 Ida. 587, 138 Pac. 1116.)

Verdicts in this case should have been certain and responsive to the allegations in the information. (8 Cal. Jur. 402, sec. 431.)

. A. H. Conner, Attorney General, and John W. Cramer, Assistant Attorney General, for Respondent.

An information which charges the accused with some crime known to the statute, committed on or about a specific date, and alleges that the unlawful act was done wilfully, unlawfully and feloniously, and indicates the particular crime charged, with the time, place, circumstances and conditions of the same, is sufficient. (*State v. Steers,* 12 Ida. 174, 85 Pac. 104; *State v. Dawe,* 31 Ida. 796, 177 Pac. 393.)

A distinct act of taking is not necessary to constitute embezzlement. (C. S., sec. 8456.)

Where one systematically institutes a continuous series of withholding of his principal's money, the series of acts constitutes but one offense, namely, embezzlement of the amount so withheld. (*State v. Dawe, supra.*)

Assignments of error involving the action of the court in overruling an objection to the introduction of any evidence and its rulings upon the introduction of certain oral and documentary evidence are not reviewable upon appeal when no exceptions thereto were taken and preserved in a bill of exceptions. (C. S., sec. 9006; *State v. Brockman,* 39 Ida. 468, 228 Pac. 250; *State v. White,* 33 Ida. 697, 197 Pac. 824; *State v. Peck,* 14 Ida. 712, 95 Pac. 515.)

It is not error for the court to refuse to give an instruction requested by the defendant when the same is fully covered by the instructions given. (*State v. Hoagland,* 39 Ida. 405, 228 Pac. 314; *State v. Cosler,* 39 Ida. 519, 228 Pac. 277; *State v. Jurko,* 42 Ida. 319, 245 Pac. 685; *State v. Sayko,* 37 Ida. 430, 216 Pac. 1036.)

The general rule is that the intent necessary to constitute the offense of embezzlement may be inferred from the knowing and intentional misappropriation of funds or property entrusted to the defendant's care. (*United States v. Harper,* 33 Fed. 471; *Ford v. State,* 46 Neb. 390, 64 N. W. 1082; *State v. Merkel,* 189 Mo. 315, 87 S. W. 1186; *State v. Kortgaard,* 62 Minn. 7, 64 N. W. 51; *Hagood v. State,* 5 Ga. App. 80, 62 S. E. 641.)

A charge on a hypothetical statement of facts, declaring the legal result thereof, or stating that, if the jury find the existence of certain facts, certain legal conclusions will follow, is not a charge on the facts, and does not invade the province of the jury. (*State v. Jurko, supra;* Randall's Inst. to Juries, 207, sec. 117; *State v. Gohl,* 46 Wash. 408, 90 Pac. 259.).

The word "wrongfully" when used in connection with the crime of embezzlement implies criminal intent. (*Masters*

*v. United States*, 44 App. D. C. 350, Ann. Cas. 1916A, 1243.)

When errors are assigned, if they are not discussed in the brief and no authorities are cited in support of the assignments, they will neither be reviewed, considered nor discussed by the court. (*State v. Brockman*, 39 Ida. 468, 228 Pac. 250; *State v. Lundhigh*, 30 Ida. 365, 164 Pac. 690.)

Where defendants are charged jointly the general rule is that separate verdicts must be returned against each defendant. (*State v. Cottrell*, 12 Ida. 572, 86 Pac. 527.)

A general specification of error that the evidence is insufficient to sustain the verdict, without stating the particulars in which it is alleged to be insufficient, does not, under C. S., sec. 9068,. require this court to consider such specifications. (*State v. Johnson*, 39 Ida. 440, 227 Pac. 1052; *State v. Sayko*, 37 Ida. 430, 216 Pac. 1036; *State v. Maguire*, 31 Ida. 24, 169 Pac. 175.)

A demand for the money alleged to have been embezzled is not necessary in this case. (20 C. J. 429, sec. 17.)

BRINCK, Commissioner.—The appeal is from a judgment of conviction and order denying a motion for a new trial.

Defendants K. S. Peters and Frank G. Lechleiter were respectively general manager and secretary of the Mutual Building and Loan Association, operating as such at Twin Falls, Idaho. On October 1, 1919, they had made a contract with the association, which provided that for a period of ten years defendants should be such officers, and should devote all their time to the interests of the association and in the sale of its stock. It was provided in the contract that the association should pay the defendants a commission of two dollars per share on all shares of stock sold, and one per cent upon the amount of all loans made by the association. Defendant Lechleiter, as secretary, had charge of the books and all the affairs of the office, including the receipt and disbursement of moneys of the association, except that moneys on deposit in banks must be paid out on checks signed also by the president and treasurer of the association.

Defendant Peters was in charge of the stock selling, and did most of the work outside of the office. It appears from the evidence that the board of directors held meetings regularly, but that none of them paid any particular attention to the books of the company, and the officers whose duty it was to sign checks apparently paid no attention to what the expenditures were for, since they customarily signed checks in quantities in blank, and left them with the secretary to use in the general conduct of the business of the association. Peters and Lechleiter from time to time drew moneys of the company, partly from the cash in the office, and partly by means of checks upon the bank deposits; and it was apparently known to the directors, and tacitly agreed by them, that defendants should draw in this way such moneys as were owing them under their contract, but the evidence tends to show that none of them knew defendants were so taking money in excess of that earned under the contract. All amounts drawn by either of defendants were entered upon the books of the association, but immediately before closing the books at periods when reports were made to the directors, as well as to the commissioner of finance, the debit balance in the account of defendants was charged off to some other account, such as stock loans, or general accounts receivable account, and after the statements were rendered, were charged back into the defendants' account. In October or November, 1923, it was discovered by the board of directors that defendants had drawn from the company's funds and paid to themselves more than they had earned under the contract, and on being accused of this fact by the directors, the defendant Lechleiter admitted that they were thus overdrawn some $14,000 or $18,000, as variously stated by different witnesses. An audit fixed the amount at that charged in the information, and the defendants were jointly charged with its embezzlement, under C. S., sec. 8451, providing, among other things, that an officer, servant or agent of an association or corporation, who fraudulently appropriates to any use or purpose not in '

the due and lawful execution of his trust any property in his possession or under his control by virtue of his trust, is guilty of embezzlement.

The evidence is not certain as to how much of the money was actually withdrawn by each defendant, and in the main the withdrawals were actually made by Lechleiter, including that appropriated to the use of Peters; but the evidence is sufficient to support a finding that Peters was at least responsible under C. S., sec. 8093, and actually received for his own use some $4,000 of the total.

[1] The appellants assign 96 errors. It is of course impossible to discuss all of them. A large number of the assignments as to rulings on evidence and other matters at the trial are not supported by exceptions taken, and are therefore not reviewable. (*State v. Brockman,* 39 Ida. 468, 228 Pac. 250; *State v. White,* 33 Ida. 697, 197 Pac. 824; *State v. Jurko,* 42 Ida. 319, 245 Pac. 685.) An examination of such assignments, however, shows that no error of any consequence was committed.

[2] One of appellants' principal contentions is that more than one offense is charged in the information, shown by the evidence (if any is proven) and found by the jury, and is raised by a demurrer to the information as charging more than one offense, and an assignment of variance, and of insufficiency of the evidence to support the verdicts. No exception was taken to a denial of their motion to elect upon this ground. The information specified the official capacity of defendant Peters as manager, agent and servant of the association, and of defendant Lechleiter as secretary, agent and servant of the association, and alleges that by virtue of their employment and trust in said capacities, there came into their possession, care, custody and control, $18,442.68, the property of the association, and for its use and benefit; and that said defendants, after the property had so come into their possession, care, custody and control, did "between the said 6th day of January, 1921, and the said 12th day of November, 1923, and continuously from said 6th day of

January, 1921, up to and including the said 12th day of November, 1923, wilfully, unlawfully, wrongfully, fraudulently and feloniously, convert, embezzle and appropriate said money and personal property to their own use, not in the due and lawful execution of their aforesaid trust''; further alleging that $17,070.56 was so converted, embezzled and appropriated within three years preceding the filing of the information.

Defendants urge that the allegations in the nature of a *continuando* necessarily imply separate and distinct conversions, and that such conversions constitute separate offenses, because it is not further alleged that the individual conversions were parts of a systematic plan of peculations. That a series of conversions by one occupying a fiduciary or confidential position, the appropriations constituting a continuing series systematically instituted, and the embezzlement of the separate amounts not being susceptible of direct proof, may constitute a single offense of embezzlement was decided in *State v. Dawe,* 31 Ida. 796, 177 Pac. 393, in which decision many of the authorities are reviewed. In some of the decisions the conclusion that but a single offense is committed is based upon the fact that the series of acts is systematically instituted and carried out (*Willis v. State,* 134 Ala. 429, 33 So. 226; *State v. Wetzel,* 75 W. Va. 7, Ann. Cas. 1918A, 1074, 83 S. E. 68); in others the decision is based upon the fact that the specific separate peculations cannot be identified and determined, ·and that unless the mere result of the whole series of transactions may become the basis of one continuing offense, no offense is susceptible of proof. (*Jackson v. State,* 76 Ga. 551; *Ker v. People,* 110 Ill. 627, 51 Am. Rep. 76; *State v. Reinhart,* 26 Or. 466, 38 Pac. 822.) In other decisions there appear both a systematic series of conversions and the impossibility of definitely establishing any particular separate act. (*State v. Dawe, supra; State v. Dix,* 33 Wash. 405, 74 Pac. 570.)

It would seem that whether either or both of these conditions be requisite to establish the status of the acts as a

continuing offense, such condition is rather a matter of evidence than of allegation in the information. If either or both conditions are essential to a continuing offense, the evidence, failing to show them, would thus not support the allegations of a continuing offense. The information definitely alleged that the offense was continuing, and similar allegations are held not duplicitous. (*State v. Wetzel, supra; Jackson v. State,* 76 Ga. 551; *State v. Dix, supra.*) The demurrer was properly overruled.

[3] The jury were instructed, in effect, that the conditions above referred to must both exist to justify a conviction of the continuing offense alleged; the evidence is sufficient to sustain a finding that the acts were systematically carried out, and the record further shows, as is admitted by appellants in their brief, that it would be impossible to say as to any particular withdrawal of money that a fraudulent intent existed with reference thereto, on the part of either defendant. The evidence is thus sufficient to sustain the verdict on the theory of a continuing offense.

[4] It is argued that the jury by finding separate verdicts, and specifying separate amounts, must have convicted the defendants upon the theory that they were not jointly liable, and that each committed a distinct offense. The verdict as to each defendant was "guilty as charged in the information," and specified the amount and value of the money embezzled by Lechleiter to be $13,701.67, and by Peters to be $4,471.00. The better rule is that a verdict finding a defendant "guilty as charged" is a finding that the amount taken is that averred in the charge, and that the jury is not required to specify the value of such property. (*State v. Kelliher,* 32 Or. 240, 50 Pac. 532; *State v. Fox,* 83 Conn. 286, 19 Ann. Cas. 682, 76 Atl. 302.) In any event, the only fact necessary for the jury to find upon in this connection is whether the property taken is of the value of more than $60 or not more than $60. The jury were properly instructed on the question of joint liability, and by apparently computing the amounts which each defendant

actually received for his own use, will not be held to have misapplied the instruction as to joint liability.

[5] The appellants further claim error in overruling their special demurrer, which was upon the ground that the information "does not substantially conform to the requirements of Sections 8852, 8826 and 8827 of the Compiled Statutes." The demurrer does not point out the particulars in which it is claimed the information is insufficient, under these sections. They now urge that the information is uncertain in various respects; but the demurrer filed does not entitle them to a review of the court's ruling upon this ground. The right to demur for uncertainty is given to enable a defendant to have made certain the charge against him, so that he may properly defend against it, and he should specify the respects in which he requires more definite accusation; and in the absence of such specifications, it is not error to overrule the demurrer, and the ruling will not be reviewed on appeal. (31 C. J. 817; *People v. Bradbury,* 155 Cal. 808, 103 Pac. 215; *People v. Hatch,* 14 Cal. App. 521, 109 Pac. 1097; *People v. Tomalty,* 14 Cal. App. 224, 111 Pac. 513.)

[6] Defendants requested an instruction to the effect that to warrant a conviction, the evidence must exclude every hypothesis save that of guilty. The refusal of this instruction was proper, both because the request omitted the requirement that such other hypothesis be reasonable and because the evidence was not solely circumstantial. (*State v. McLennan,* 40 Ida. 286, 231 Pac. 718; *State v. Marcoe,* 33 Ida. 284, 193 Pac. 80.)

[7] Objection is made to certain instructions singling out evidence, in one case defendants' admissions, and in another case certain changes made by them in book entries, as proper matter for the jury to consider with all the other evidence. The court made no comment on the weight or effect of this evidence, and no prejudice appears. (*State v. Caviness,* 40 Ida. 500, 235 Pac. 890; *State v. Jones,* 28 Ida. 428, 154 Pac. 378; *State v. Pettit,* 33 Ida. 326, 193 Pac. 1015;

8 Cal. Jur. 294.) The instruction as to admissions was, in fact, invited by a request of defendants for an instruction that such admissions should be viewed with caution, which was given, and was at least as favorable as they were entitled to on this subject.

[8] Appellants complain that the element of fraudulent intent was omitted from various instructions, including the instructions defining a continuing offense, stating the effect of checks as instrumentalities for the withdrawing of funds and the rule as to joint liability of the parties. These instructions were upon specific phases of the case, and the jury were otherwise fully and repeatedly advised that a fraudulent intent must be proved beyond a reasonable doubt, so that the omission of the express requirement of fraudulent intent in the instructions complained of could not have been prejudicial.

Specific objection is made to the following instructions, given at the request of the state, directly upon the matter of fraudulent intent:

"The court instructs the jury that the law presumes every man intends the natural and probable results of his acts, and, if you find from the evidence beyond a reasonable doubt, that the defendants knowingly converted the funds of the Mutual Building and Loan association to their own use, in the manner charged in the information on file herein, you will be authorized to infer therefrom the criminal intent, and that they intended at the time of such conversion to deprive the Mutual Building and Loan association thereof."

"The court further instructs the jury that to constitute embezzlement there must be a fraudulent intent to deprive the owner of his property, and appropriate the same. The existence of such intent may be inferred from the circumstances of the case, and if the act or acts constituting the appropriation are knowingly or intentionally committed, a criminal intent will be presumed. The criminal intent of one who has received money or other property in a fiduciary

capacity need not have been formed at the time he was entrusted with the possession. It must have existed at or before the time the property is wrongfully appropriated.''

[9]  Another instruction complained of was requested by the state and marked "given," but does not appear from the record to have been included in the instructions actually given. Appellants contend that by these instructions the court invaded the province of the jury, by telling them that they might infer criminal intent from the acts of appropriation. The first instruction is not susceptible of this criticism, because it required as the basis of inference of criminal intent proof beyond reasonable doubt that the defendants knowingly converted the funds in the manner charged in the information, and the information charged the appropriation to have been fraudulent. [10]  The only portion of the instruction properly subject to the objection consists of the words ''if the act or acts constituting the appropriation are knowingly or intentionally committed, a criminal intent will be presumed.'' If by the use of these words the jury were led to believe that if the defendants merely knew that they were appropriating the money to their own use, the criminal intent would be presumed, regardless of their intent to cause loss to the association, or regardless of their *bona fide* belief that they were either entitled under the contract, or permitted by the board of directors, to take the money, the objection would not be unfounded. It is true, however, that one is presumed to intend the necessary or natural consequences of his voluntary act, and that generally, if it is proved that the accused knowingly committed an unlawful act, which is made a crime, it will be presumed that the act was done with a criminal intent. (16 C. J. 81.) But this rule, without qualifications, does not apply to crimes for which a specific intent is necessary. (*Ibid.*) Under the statute upon which the present information is based, a fraudulent intent is expressly required. (C. S., sec. 8451.) Even under such statute, or rule of law, however, it is frequently stated in view of the evidence in a particular

case, and of the particular defense made in such case, that fraudulent intent may be inferred or even presumed as a matter of law from the commission of the unlawful act knowingly done, because the necessary result must be that the owner of the property suffers loss from the appropriation, and the wrongdoer, presumed to intend the consequences of his act, must have intended such loss to the owner. These are cases in which it does not expressly appear that the defendant claimed the right to make the appropriation, though in some of them his intent to restore the property is made an issue. Among these decisions may be cited the following: *United States v. Harper,* 33 Fed. 471, 481, 482; *National Life etc. Co. v. Gibson* (Ky.), 101 S. W. 895, 12 L. R. A., N. S., 717; *State v. Duerksen,* 8 Okl. Cr. 601, 128 Pac. 881, 52 L. R. A., N. S., 1013; *State v. Campbell,* 99 Wash. 502, 169 Pac. 968; *Reeves v. State,* 95 Ala. 31, 11 So. 158, 162; *State v. Schumacher,* 162 Iowa, 231, 143 N. W. 1110; *Agnew v. United States,* 165 U. S. 37, 17 Sup. Ct. 235, 41 L. ed. 629; *Orr v. State,* 6 Ga. App. 628, 65 S. E. 582; *Commonwealth v. Tenney,* 97 Mass. 50.

Where the act of appropriation is without knowledge that the wrongdoer had no right to take the property, the necessary intent is not established. (*State v. Barnes,* 108 Minn. 227, 122 N. W. 4; *State v. Pate,* 268 Mo. 431, 188 S. W. 139.) But if one knowingly appropriates to himself the property of another with a consciousness of no right to take it, a felonious intent is inferred. The thing must be taken without any claim of right preferred in good faith. (*State v. Larson,* 123 Wash. 21, 211 Pac. 885.)

The language used in this instruction is not above criticism, nor to be commended, and if the instruction complained of is to be considered as informing the jury that if the taking of the money, though knowingly and intentionally done, was not done with the consciousness that no right to take it existed, the necessary intent would still be presumed, it would be error which might well be prejudicial. The word "intentional," as used in penal laws, is held to import

evil intent, and unlawful purpose (*State, v. Zillman,* 121 Wis. 472, 98 N. W. 543; *St. Louis etc. R. Co. v. Batesville etc. Co.,* 80 Ark. 499, 97 S. W. 660) ; and the court by using the words "knowingly" and "intentionally" no doubt intended to include the idea of knowledge of the wrongfulness of the act and to exclude the idea of *bona fide* claim of right. The jury, in the light of the context of the two instructions above stated, and in view of the further instructions which were given, to the effect that embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted, that the evidence must establish beyond a reasonable doubt intent to defraud the owner, and must likewise establish that the property was taken without consent, express or implied, of the directors of the association, and that if they had any reasonable doubt as to whether the defendants appropriated the property under a claim of title preferred in good faith, even though untenable, they must acquit, could not have been misled by the instruction complained of. (*State v. Kortgaard,* 62 Minn. 7, 64 N. W. 51.)

[11] Appellants contend that the court erred in instructing the jury to the effect that in determining defendants' rights to compensation under their contract, they were only entitled to commissions earned up to the time of its termination, and that earnings they might have thereafter made should not be considered. There is no merit in this contention. Under no view of the contract were defendants entitled to receive moneys they had not earned. Complaint is also made of the failure of the court to inject a presumption of innocence, and the necessity of proof beyond a reasonable doubt, into various instructions given. The court fully instructed the jury on both of these matters, and there was no occasion for its repetition in each instruction. Complaint is also made as to refusal of other instructions requested by the defendants, which appear to have been fully covered by instructions given.

[12] The appellants further contend that the evidence is insufficient to sustain the verdicts. It is particularly urged

43 Idaho—37

that fraudulent intent is not shown, in that several pages of the testimony set out in the brief show, it is contended, that the directors of the association consented to the withdrawals made. On the contrary, this evidence shows rather that the directors were entirely ignorant of the fact that defendants were helping themselves to moneys they had not earned. It is also contended that no demand was made for the return of the money, but the only authority cited by counsel on this proposition (*People v. Ephraim,* 77 Cal. App. 29, 245 Pac. 769) points out that no demand is necessary in such cases as this. Where a conversion is otherwise established, a demand is not necessary. (20 C. J. 429.)

Complaint is also made of the alleged misconduct of counsel for the state in various respects. No exceptions were taken upon which to base any of these assignments, nor does the misconduct itself appear from the record.

All assignments of error have been carefully examined. There are no errors of a prejudicial nature shown by any of the assignments, and I recommend that the judgment of the trial court be affirmed.

Varian, C., concurs.

The foregoing is approved as the opinion of the court, and the judgment is affirmed.

Budge, Givens and Taylor, JJ., concur.

Petition for rehearing denied.