[No. 22939. *En Banc.* June 29, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. LELAND
BLACK, *Appellant*.[1]

[1]Reported in 1 P. (2d) 206.

238

*Henry Arnold Peterson,* for appellant.

*Bertil E. Johnson, H. B. Gardner,* and *Fred C. Dorsey,* for respondent.

TOLMAN, C. J.—The appellant was convicted of larceny of an automobile, charged to have been committed both by embezzlement and by taking and driving away. The jury recommended leniency. A motion for a new trial was made and denied, and the appellant was sentenced to the penitentiary for an indeterminate term of not less than one nor more than five years. From that judgment, this appeal was taken.

The applicable part of the statute, Rem. Comp. Stat., § 2601, reads as follows:

"Every person who, with intent to deprive or defraud the owner thereof—

"(1) Shall take, lead or drive away the property of another; or . . .

"(3) Having any property in his possession, custody or control, as . . . employee, . . . or a person authorized by agreement . . . to take or hold such possession, custody or control, . . . shall secrete, withhold or appropriate the same to his own use . . .

"Steals such property and shall be guilty of larceny."

Undisputed testimony established substantially the following facts: From sometime in August, 1929, until about October 15 of the same year, the appellant was employed as an automobile salesman at Sumner by Central Motors, a concern that had the Durant automobile agency at Tacoma and a branch at Sumner. The car which the appellant was charged with taking unlawfully was a Durant "60" coach, received new by him from Central Motors for use as a demonstrator. During his employment by that concern, he used the car in going to and from his home and kept it there at night in his own garage.

The Sumner branch agency was discontinued about October 15. Brydges and one Goodman and the appellant had some negotiations looking to the formation of a partnership to take the Durant agency at Sumner, but these led to no agreement, and Brydges and Goodman, without the appellant, then formed a partnership under the name Valley Durant Company, and took over the agency and continued the sale of Durant cars at the same location. Along with the agency, Brydges and Goodman acquired title to the car in question, the bill of sale bearing date October 28, 1929.

About November 1, the appellant was employed as a salesman by Brydges and Goodman, his compensation to be a commission of five per cent on factory list prices. He had had the possession and use of the car during the interval between the surrender of the agency by Central Motors and the assumption of it by Brydges and Goodman; and, after his employment by them, his possession and use of the car continued as before, though he may not have had the right to use it for his own purposes to the same extent as before.

On the evening of November 19, Brydges, who was on intimate terms socially with the appellant and his family, called at the appellant's home, and during the

evening said to the appellant that probably there would not be enough firm business to occupy them both in selling cars during the winter, and advised the appellant to look for other employment, intimating that there might be an opportunity with a used-car concern in Tacoma, which he mentioned.

The next morning the appellant took his wife and infant child to the home of his father and mother in Sumner, where she was to spend the day and evening. He then drove to the garage of the Valley Durant Company. While there, he told Brydges that he was going to Puyallup to take a prospective customer to Tacoma, where the latter expected to obtain money with which to make the first payment on a car. He then drove to Puyallup, and, finding that the prospective customer had changed his mind, went on to Tacoma. Here he sought employment of the person suggested by Brydges, but found the terms unsatisfactory. He returned to his home in Sumner, left a message for his wife that he was going to California for a few days, and then drove to Clovis, California, arriving there two days and a half later.

At Clovis the appellant visited a friend named Brown, with whom he had had correspondence about Brown's coming to Puget Sound and going into business with him. Brown had a service station at Clovis, and had promised the appellant that he would go into business with him in Tacoma as soon as he, Brown, sold his service station. The appellant's intention was to assist Brown to make a sale of the service station quickly, and, if possible, bring Brown back with him, returning in any event by the end of the month, at which time he supposed his employment with Brydges and Goodman would terminate.

Upon his arrival at Clovis, the appellant wrote his wife. Some days later, he received a letter from his

mother, as a consequence of which he placed the car in a hotel garage in Fresno, not far from Clovis, and made no further use of it. The car and its license plates had not been changed in any way, and the appellant had not driven it to any place other than Clovis, where he had kept it openly at Brown's service station or home.

The day after the appellant's departure for California, Brydges inquired of the appellant's wife as to his whereabouts, and she did not inform him, but said she knew of no reason why he should not be at work. Apparently it was during the second week after the appellant's departure that his parents or one of them told Brydges or Goodman where the car was. It was then arranged that the appellant's father should go to California and drive the car back, but, by the time the father could procure money for the trip, the matter of the taking of the car had been put into the hands of the prosecuting attorney, and authority for him to get the car was withheld. ·

It was the appellant's contention, and he offered to show, that, by the terms of his employment by Central Motors, his compensation was partly by way of salary and partly in commissions on sales; that he was to have the use of the demonstrating car, and did use it, for his own purposes, to go where he chose out of working hours without special leave, for which privilege he paid twenty-five dollars a month; that, by his employment agreement with Brydges and Goodman, he was to be compensated by commissions on sales at a lower rate than that paid by Central Motors and was to receive no salary, but was to have the privilege of using the car for his own purposes the same as before, supplying gas and oil himself but paying no hire. Brydges and Goodman testified that, after they took the agency and the title to the car, the appellant was instructed not to make personal use of the car without permission

in each instance, or at least without informing one of them that he intended to use it, but that he might keep the car in his own garage at home.

There was testimony that the appellant, and to some extent his wife, his father and his mother, all made personal use of the car; and they all testified that permission to do so had never been asked or received from Brydges or Goodman, and that both of them knew of the personal·uses to which the car was being put.

It is assigned as error that the trial court denied the appellant the right to prove by cross-examination of Brydges and Goodman, and by his own testimony and other evidence, what the agreement or arrangement was between Central Motors and himself as to his use of the car for purposes personal to himself and members of his family. This was error. The appellant offered to prove, and some evidence crept in tending to indicate, that the understanding between him and Brydges and Goodman was that he should have, while in their employ, the same privileges with the car that he had enjoyed while in the employ of Central Motors under Brydges as branch manager, but that he was to pay no hire, because his compensation for services was less. Obviously, if the latter arrangement was but a continuation of the earlier one, with some slight modification, it was essential that the terms of the earlier one be shown; for otherwise the appellant could not put before the jury his version of the later understanding.

Even though it should turn out that his version is grounded on mistake or untruth, nevertheless he is entitled to introduce all the competent evidence available to him in support of it. The nature and extent of his rights in the car in question have a vital bearing upon the intent with which he took the car to California. If he had the right under his agreement to take time off

from his employment and drive the car as far as he did, then by driving it away, he hardly could have intended to steal it. And the same would be true, even if he did not actually have that right, but honestly though mistakenly, believed he did, perhaps through some vagueness of the agreement.

The trial court also excluded evidence offered by the appellant to explain why he did not return to Sumner with the car by the end of October, as he testified he intended when he drove it away; and this ruling is assigned as error. Mainly, this evidence was to the effect that the appellant's mother, as a result of conversations with Goodman and perhaps Brydges also, wrote a letter to him at Clovis, saying that Brydges and Goodman were worried about the car and were threatening to cause trouble, and that he should immediately put the car in a garage and leave it there and not use it pending further advice; and that the appellant followed these directions and waited, supposing that he was doing as the owners of the car desired. This evidence ought to have been received, together with such other competent evidence as had any bearing upon the original intent of the appellant in taking the car to California.

The state argues that the evidence just referred to was inadmissible, because an intent or offer to restore stolen property, or even actual restitution of it, is not a defense to a prosecution for the crime of stealing it. But the excluded evidence was not offered in extenuation or defense of a crime committed, but as tending to show that, for lack of felonious intent, the taking in the first place did not constitute a crime. The appellant claims he had the right, or at least in good faith, though erroneously, believed he had the right, to drive the car away as he did for the purpose he had in mind, and that he then actually intended to return the car to

its owners within the term of his employment as he conceived it. Therefore, if he had brought the car back and surrendered it to the owners within that time, those acts would have been very potent evidence of the absence of an intent at any time to deprive the owners of their property. But the appellant did not bring the car back, and this fact, unexplained, is strong evidence that he did not originally intend to do so, or, if he did, that he changed his mind. By the excluded evidence, however, he would have presented to the jury his explanation of the failure to return the car, which the jury might have believed to be consistent with an innocent intent.

The appellant assigns as error the giving of the following instruction:

"You are instructed that under the laws of the state of Washington, the element of intent on the part of the defendant to deprive and defraud the owner of the property described in the information is necessary to establish the crime of grand larceny, and in this connection you are further instructed that when an act is forbidden by law to be done, the intent to do the act is the criminal intent and the law presumes the intent to deprive and defraud the owner of the property described in the information from the commission of the act."

It is the latter part of this instruction that is criticized, and we find the criticism justified for several reasons. In the first place, no presumption of law concerning intent subsisted at this stage of the case or could thereafter arise. A legal presumption of criminal intent may have arisen previously, but if so, it had served its purpose when the appellant took the burden it imposed upon him and introduced evidence to rebut it. The jury might properly have been instructed that, if they found from all the evidence that the appellant secreted, withheld, or appropriated the automobile to

his own use, the law would permit them then to infer as a fact from such act or acts of the appellant that he intended to deprive or defraud the owners of their property, unless, from a consideration of all the evidence, they entertained a reasonable doubt whether such intent existed. But it was not proper to give the jury a legal presumption to apply or not apply during their deliberations, according as they might find or not find certain facts. The indulgence and application of legal presumptions is a function of the judge, not the jury.

Secondly, the statement that "the law presumes the intent to deprive and defraud . . . from the commission of the act" forbidden by law, as applied to the present case, involves an absurdity. The "act forbidden by law" here was not simply a secreting, withholding, or appropriating of property, but a doing so "with intent to deprive or defraud the owner thereof." Hence the instruction told the jury, in effect, that from a secreting, withholding, or appropriating of property with intent to deprive or defraud the owner thereof, the law presumed an intent to deprive or defraud the owner thereof. This begged the question, and must have been confusing.

In the third place, if the instruction be construed to mean that, should the jury believe that the appellant secreted, withheld or appropriated to his own use the automobile in question, they might infer therefrom an intent on his part to deprive or defraud the owners thereof, then the instruction unduly restricted the scope of evidence to be considered by the jury in determining what the appellant's intent was. In spite of the erroneous exclusion of evidence hereinabove noticed, not a little evidence crept in which tended to prove that the appellant had no dishonest intent; and the appellant was entitled to have this evi-

dence considered and weighed by the jury in their deliberation upon the question of intent.

Finally, it probably was not at all clear to the jury what the court meant in this instruction by "act forbidden by law to be done." They might have considered that it was somehow wrong and hence unlawful for the appellant to drive the car beyond Puyallup, or beyond Tacoma, or out of Pierce county, or out of the state, or to put it in a garage in California, or to fail to bring it back before his employment terminated; and hence might have believed that from one or some or all of those acts the law presumed a criminal intent. Or different jurors might have considered different acts as being wrong and unlawful, and, all agreeing that the appellant was guilty of a wrongdoing of some kind or other, concluded unanimously that they were obliged by law to find a criminal intent. The instruction was too vague in this respect, even had it been otherwise correct.

Error is assigned upon certain instructions and refusals to instruct, whereby the appellant was precluded from having the jury consider whether he intended to deprive his employers of the car permanently or temporarily. But the period of the intended deprivation (if there was a deprivation at all) was not material. The vital question in the case was, Did the appellant intend to deprive his employers of the car itself, to its full value and completely, or *merely the use of it* for a few days? If the former, then it did not matter that he intended to restore the car later; if the latter, then he was not guilty of embezzlement of the car, whatever else he might have been guilty of. Since there must be a new trial and we can not now clearly foresee what evidence will then be submitted, we can only point out that the instructions then given should

clearly recognize the rules of law which we have just suggested.

The appellant complains that the court erred in permitting the prosecuting attorney, over the appellant's objection, to question him on cross-examination concerning a certain collection of money from one Parkins, made two days before his departure for California. While this was improper, it proved to be harmless, because it appeared that the money collected was not appropriated by the appellant, but reached the person entitled to it. The error will not occur on another trial.

In reversing the judgment appealed from, it may not be amiss to observe that, if it should appear beyond question upon another trial that the appellant had lawful possession of the car when he started for California with it, the instructions might be simplified to advantage by taking from the consideration of the jury that part of the accusation based upon Rem. Comp. Stat., § 2601, subd. (1), and submitting to the jury only the matters actually in controversy. Furthermore, it seems not improbable that upon another trial it may develop, or at least be one theory of the defense, that the appellant had lawful possession of the automobile with the privilege of making some, but not unlimited, use of it, and that by driving it to California, he merely made a misuse, or an unauthorized use, of the car; in which event some of the cases cited in the annotation in 62 A. L. R. 354 might be of assistance to the court and counsel in determining what rules of law are applicable in such a situation.

Reversed and remanded for a new trial.

PARKER, MAIN, BEALS, and BEELER, JJ., concur.

HOLCOMB, J. (dissenting)—The ownership and right of possession of the car in question had wholly passed

from Central Motors to Brydges and Goodman. When the agency of Central Motors was terminated on October 15, 1929, thenceforth they were as strangers to the car. They had no right whatever to say when, where, or how, the car should be used. Only Brydges and Goodman had that right. Brydges, who was the business and sales manager of the Valley Durant Company, testified that appellant had no right to use the car for pleasure or personal purposes. Contrary to his contention, appellant was permitted to testify as to what he understood his rights to the car were. His version of his rights to it differed from that of the state's witnesses, but it was for the jury to say whether he had the right to use the car for pleasure or personal purposes.

The cross-examination and the offer of proof were therefore improper, and the trial court correctly so decided.

The offer of appellant of testimony as to the nature of his right to the personal use of the car before it was the property of Brydges and Goodman and before his employment by them, was the offer of wholly irrelevant and incompetent evidence.

Under the statute, if appellant had the intention at the time of taking the car to appropriate it to his own use and defraud and deprive the owners thereof, his offense was complete at the time of the taking. Under this statute it is not necessary to intend to permanently deprive the owner of the property. *State v. Larson,* 123 Wash. 21, 211 Pac. 885. Nor does the intention of the accused to restore the money, or other property embezzled, at some future time relieve the act of its criminal nature. 20 C. J. 437; 9 R. C. L. 1279-1298; *State v. Campbell,* 99 Wash. 502, 169 Pac. 968.

Not even the subsequent return of the property, or repayment of the money to the owner, excuses or re-

lieves the offense of its criminal nature if the offense was complete at the time of the appropriation. 9 R. C. L., *supra; State v. Pratt,* 114 Kans. 660, 220 Pac. 505, 34 A. L. R. 189.

Under the evidence in this case, appellant on the day alleged, without the knowledge or consent of the owners of the car, appropriated it to his own use, secretly removed it from the possession and control of the owners, drove it to a distant state upon the pretext that he intended to enlist the cooperation of another man in returning to Sumner, Pierce county, within ten days, with the other man to go into business together in Tacoma. It is certain that the car was appropriated by appellant to use for an unauthorized purpose. It was a question for the jury, under all the facts and circumstances, whether he then appropriated it with a felonious intent.

Hence, the defense of an intention on the part of appellant to take the car only for temporary use and the instructions requested on the theory that the intention must have been to permanently take and deprive the owners of the property, were not well founded.

The court aptly instructed the jury upon the question of the intention of appellant when he took the car, in line with our cases under the statute in question. *State v. Campbell, supra; State v. Larson, supra.* See, also, *State v. Peters,* 43 Ida. 564, 253 Pac. 842.

Appellant argued that, since the intent cannot be implied as a matter of law, but must be proved as a matter of fact, no specific intent to appropriate the property by appellant was shown in this case. Two cases cited by appellant, *State v. Dolen,* 17 Wash. 499, 50 Pac. 472, and *State v. Clark,* 98 Wash. 81, 167 Pac. 84, held that the presumption of criminal intent may arise from proof of the commission of an unlawful act, and, if it is proved that the accused committed the un-

lawful act charged, it will be presumed that the act was done with a criminal intention, and it is for the accused to rebut that presumption. The act of itself is evidence of intent, and the specific, felonious intent may be inferred from all the facts and circumstances in evidence.

In this case, the trial court gave one instruction substantially the same as one that was before us in *State v. Larson, supra,* l. c. p. 32. We there held that the instruction was one, in effect, that, if one took property from another knowing that he had no right so to do, a felonious intent therefrom might be inferred. And, on the other hand, if one took property belonging to another in a *bona fide* belief that he had a right to take it, no felonious intent could be inferred therefrom. But it was said that "the contrary conclusion must result where the taker is conscious of the fact that he is committing a wrong in taking the property."

Here, as in that case, the trial court aptly instructed the jury as to the question of taking under a claim of right so to do even though that claim of right was untenable; and that if the jury so found their verdict should be not guilty.

Under our own cases, the judgment should be affirmed. I therefore dissent.

MITCHELL and MILLARD, JJ., concur with HOLCOMB, J.