[No. 23517. Department One. February 25, 1932.]

THE STATE OF WASHINGTON, *Respondent,* v. C. B. ALEXANDER, *Appellant.*[1]

*D. Elwood Caples,* for appellant.

*Dale McMullen* and *Claude C. Snider,* for respondent.

BEELER, J.—In count I of the information, the defendant, C. B. Alexander, was charged with having

[1]Reported in 8 P. (2d) 298.

unlawfully loaned to himself as an officer of the American Security Bank of Vancouver, a banking corporation, the sum of $1,875 of the bank's funds without having procured a resolution authorizing and approving such loan by a majority of the directors at a meeting at which he was not present. This count is based upon Rem. Comp. Stat., § 3259, which reads:

"No bank or trust company shall, nor shall any officer or employee thereof on behalf of such corporation, directly or indirectly, loan any sum of money to any director, officer or employee of such corporation, unless a resolution authorizing the same and approved by a majority of the directors, at a meeting at which no director, officer or employee to whom the loan is to be made shall be present, shall be entered in the corporate minutes.

"Every director or officer of any bank or trust company who shall borrow or shall knowingly permit any of its directors, officers or employees to borrow, any of its funds in an excessive amount or in violation of the provisions of this section, shall be personally liable for any loss or damage which the corporation, its shareholders or any person may sustain in consequence thereof, and shall also be guilty of a felony."

In count II, the defendant was charged with the theft of a promissory note of the value of $910, executed by J. N. Latham, and which note was payable to, and in the possession of, the bank at Vancouver, together with $965 of the bank's money. This count is based upon Rem. Comp. Stat., §§ 2601-2605, and, in part, reads:

"That he, the said C. B. Alexander, on or about the 1st day of December, 1928, in the county of Clark, state of Washington, did, then and there *with intent to deprive and defraud the owner thereof,* unlawfully and feloniously take, steal and appropriate to his own use property of the American Security Bank, . . ." (Italics ours.)

A trial to the jury resulted in a conviction as charged. Motion for a new trial being denied, judgment and sentence were entered upon the verdict, and this appeal followed.

From the evidence, the jury were warranted in finding these facts: That from July, 1926, to April 15, 1929, the appellant was president of the American Security Bank at Vancouver, Washington, and a member of the board of directors and one of its principal stockholders; that the bank closed its doors on April 15, 1929, at which time it passed into the hands of the banking supervisor for liquidation; that Latham was a director and stockholder of the bank; that the stockholders of the bank, prior to September 24, 1928, mutually agreed to a voluntary assessment being levied against their respective stock; that Latham's stock was assessed $900, and on that day he executed and delivered his promissory note, payable to the order of the bank, in payment of his assessment; that Latham owned fifteen shares of stock valued at $125 per share, or a total valuation of $1,875.

At some time prior to December 1, 1928, considerable friction arose between the appellant and Latham, and by reason of that fact, together with the further fact that the appellant had been negotiating with the American Banking Corporation, a banking institution, with a view of having that company purchase and take over the American Security Bank of Vancouver, the appellant was anxious and desirous to get possession of the Latham stock, apparently for the purpose of eliminating Latham from the board of directors, and also for the purpose of consummating the deal with the American Banking Corporation.

With this end in view, the appellant, on December 1, 1928, interviewed Dick Hardison at his place of business in Vancouver, and persuaded and induced him to

execute his promissory note in the sum of $1,875, payable to the order of the American Security Bank. Hardison testified: ''The doctor (meaning appellant) told me he was in a jam and asked me to sign the note.'' It was understood between Hardison and the appellant that the latter would pay the $1,875, and that Hardison would be relieved thereof. Hardison never received any money on this note.

After securing Hardison's signature to the note, the appellant took it to the bank, where a record was made indicating that it was an ordinary loan to Hardison, the record further showing a credit to Hardison's account in the sum of $1,875. On the same day, the appellant transferred this credit of $1,875 to his own account as trustee. This account appears on the records of the bank as ''C. B. Alexander, Trustee, account;'' that the board of directors never authorized, by resolution or otherwise, the making of this loan of $1,875 to either the appellant or to Hardison.

With the bank records in this shape, the appellant purchased Latham's stock and paid therefor by drawing two checks on the ''C. B. Alexander, Trustee, account,'' one payable to the order of Latham for $965, and the other payable to the order of the American Security Bank for $910. As a part of this same transaction, he returned to Latham his note for $900, which had been in the files of the bank from September 24 to December 1, and thereupon Latham assigned his stock certificate for the fifteen shares to Knapp and Alexander and handed it to the appellant, who kept it at the bank.

 The appellant first contends that the evidence is insufficient to sustain the verdict and judgment, and that the trial court erred in refusing to dismiss the case at the close of the state's evidence. In support of this contention, it is argued that the loan of $1,875

was, in fact, made to Hardison and not to the appellant.

But we are of the opinion that the appellant made the loan to himself, and for his own direct benefit. Hardison signed the note at the solicitation of, and as a personal favor to, the appellant. Hardison never received any money on the note, nor did he benefit by the transaction. The appellant, and not Hardison, was to pay the note. By means of manipulating the bank's records, the appellant transferred the credit established at the bank by the Hardison note to his account, as trustee, and used it in purchasing the Latham stock. It is quite clear from the evidence that the Hardison note was worthless. On direct examination, the appellant admitted he had not delivered the fifteen shares of stock to Hardison "because his note was not good for that amount of money, and we kept the stock as security." And on cross-examination, when he was asked: "You say that you knew that Dick Hardison's note was not good for $1,875 on that date, December 1, 1928?" he answered: "Not without security."

On the other hand, it appears that the Latham note, which was in the possession of the bank on December 1, 1928, was good and collectable. In other words, the appellant extracted the Latham note from the files of the bank and returned it to Mr. Latham, together with $965 of the bank's money, and in lieu thereof the bank acquired the Hardison note, apparently wholly worthless. The fifteen shares of stock acquired by Mr. Latham passed into the possession of the appellant, although acquired with the bank's funds. This transaction was not approved by the board of directors, and hence was in direct violation of the statute.

The appellant next contends that the state failed to prove fraudulent intent on his part in taking the Latham note from the files of the bank, together

with the $965. This contention is not tenable for two reasons: First, the appellant extracted the Latham note, the property of the bank, and withdrew $965 of the bank's funds, without the approval or sanction of the board of directors, although Latham was solvent and his note collectable, whereas the Hardison note, if not wholly worthless, was at least of very doubtful value; and it is quite clear from the evidence that these facts were fully comprehended by the appellant at the time he manipulated these transactions; second, appellant's motive or purpose in acquiring the Latham stock was to aid him in disposing of the bank of which he was president to the American Banking Corporation, and to eliminate Latham from the board of trustees.

However, in cases of this character, fraudulent intent may be gathered from all of the circumstances as disclosed by the evidence. Direct or positive proof is not necessarily essential to prove fraudulent intent.

"The jury had a right, of course, to take into consideration all of the circumstances and the evidence in determining whether the appellant had a felonious intent to deprive the bank of its property." *State v. Larson*, 123 Wash. 21, 211 Pac. 885.

At the close of all the testimony, the court permitted the state, over the appellant's objection, to amend count II of the information by inserting the following: "with intent to deprive and defraud the owner thereof." Error is assigned on this ruling of the court. It appears from the record that this amendment was allowed in the absence of the jury, and that the appellant, thereafter, was given every opportunity to introduce additional testimony. The record further shows the appellant did not request a continuance, nor did he introduce any further testimony. We are satisfied he was not prejudiced by the ruling of the

court. The amendment was proper under Rule of Practice IX, § 2 (159 Wash. lxiii), which reads:

"At any time before or during trial the court may permit the amendment of an information and permit proof to be offered in support thereof, and if the defendant shows to the satisfaction of the court that he would thereby be misled, the court shall make such order as shall secure to the defendant full opportunity to defend. An information shall be considered amended to conform to the evidence introduced without objection in support of. the crime substantially charged therein, unless the defendant would thereby be prejudiced in a substantial right." Rem. 1927 Sup., § 308-9.

The appellant next contends that the court erred in denying his motion for a new trial. As we interpret the record, this motion was based primarily upon the ground that the evidence was insufficient to sustain the verdict, and hence what we have heretofore said applies with equal force to this assignment. We are satisfied from a careful reading of the evidence that the appellant was accorded a fair and impartial trial.

The judgment is affirmed.

TOLMAN, C. J., HERMAN, PARKER, and MITCHELL, JJ., concur.