[No. 24167. Department One. January 19, 1933.]

THE STATE OF WASHINGTON, *Respondent,* v. W. L. NICELY, *Appellant.*[1]

[1] Reported in 18 P. (2d) 503.

440

*Allen, Froude, Hilen & Askren,* for appellant.
*Robert M. Burgunder,* for respondent.

HOLCOMB, J.—Appellant was convicted on an indictment in the lower court of the charge of grand larceny, the jury recommending leniency, and was sentenced upon the verdict. The indictment charges that, from November 15, 1928, to and including January 13, 1931, he was a trustee and pledgee of the Puget Sound Savings & Loan Association, and, as such, had in his possession, custody and control $14,146.46 of its money; and that he appropriated the same to his own use and to the use of the Northwest Radio Service Company.

Appellant received the money specified in the indictment and other sums not mentioned therein, by virtue of a trust agreement entered into on September 19, 1927, whereby Adolph F. Linden and wife, and E. W. Campbell and wife, pledged certain specific property therein listed and any other or additional property owned by them or acquired during any unpaid balance on the account of the Puget Sound Savings & Loan Association, and for the costs and expense for protecting any of the security so pledged.

The essential facts as to the manner of the manipulation of the funds of the Puget Sound Savings & Loan Association, and the diversion thereof to the benefit of certain officers were briefly set forth in *State v. Linden,* filed December 30, 1932, *ante* p. 92, 17 P. (2d) 635. In this case, as in that, the indictment is based upon Rem. Rev. Stat., § 2601, which, so far as material, prescribes:

"Every person who, with intent to deprive or defraud the owner thereof— . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation, . . . shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto, . . .

"Steals such property and shall be guilty of larceny."

The theory of the prosecution in this case was and is that, of the moneys which went into the possession, custody and control of appellant, he had diverted and appropriated to the use of the Northwest Radio Service Company $9,575.01 out of the money received by him under the trust agreement; and that, besides the above sum, on various dates from and after June 26, 1929, until January 13, 1931, unlawfully received and secreted sums aggregating $4,567.71. Two thousand dollars of this last sum was deposited by appellant in a Tacoma savings and loan association in the name of himself and wife, and six hundred dollars given to his wife. With the exception of the first item appropriated to the use of the Northwest Radio Service Company, no one but appellant ever received any benefit from the use of the money.

It is also an admitted fact that neither the Puget Sound Savings & Loan Association nor the Lindens ever received any of these last items. It is admitted by appellant that he secreted these last items and told no one that he had that money in his possession, and that he never repaid or offered to repay the money until after he had been indicted for its embezzlement.

The trust agreement, after reciting that the property is pledged to appellant as trustee and as collateral security for that certain account upon the books of the Puget Sound Savings & Loan Association standing

in the name of the Camlin Investment Company, the principal of which account was $1,170,921.65 on August 31, 1927, contained the following further provisions which appellant asserts are material on this appeal:

"We further agree to pledge with said trustee by proper conveyance or assignment so long as any of said account remains unpaid any other or additional property or assets of whatsoever kind which we may have or acquire, or in which we may have or acquire an interest, right or claim as and when the same are acquired upon demand of the said trustee, or of the board of directors of the Puget Sound Savings & Loan Association."

And further:

"It is understood and agreed by us that this pledge of security is for such additional amount as may be necessary to be paid by the Puget Sound Savings & Loan Association, in its judgment, on account of any obligation of the Camlin Investment Company now owing or hereafter contracted for any purpose whatsoever, including the acquirement of the land, buildings, furnishings, construction and deficit in the operation of said Camlin Apartment Hotel, and the cost and expense of protecting any of said securities so pledged, and whatever is properly chargeable as interest."

This trust agreement, which was not executed until September 19, 1927, was prepared and executed pursuant to a resolution of the directors of the Puget Sound Savings & Loan Association, as shown by its minutes adopted October 2, 1926, when the directors had been advised of the fact that Linden, its president, and Campbell, its vice-president, had been diverting the association funds for construction of the Camlin hotel and some other matters. At that time, appellant was the state supervisor of savings and loan associations. He was requested to attend the next meeting of the directors, did so, and the minutes of the previous meet-

ing in which those things had been disclosed to the board were read to him. Linden and Campbell had agreed at the previous meeting to turn over to a trustee, to be selected by the directors, all of the property which they owned. At the October meeting, at which appellant was present, it was agreed that all the properties listed in the trust agreement should be turned over to appellant, to be held by him as trustee.

The trial court admitted evidence as to what was made known to Nicely at the meeting of the board of trustees of the association one year before, at which he was present, that all the stocks listed in the trust agreement should be turned over to him and held by him as trustee, and that they did not want further advances made to radio. Much complaint is made of the admission of such evidence by appellant. It is argued, in connection with this contention, that the evidence admitted had the effect of contradicting and varying the express terms of the trust agreement under which the money was received. It is asserted that, when such evidence would not be received in a civil case where a written instrument plain and unambiguous on its face was involved, much less is it competent in a criminal prosecution for a felony charge.

But we do not consider that testimony to have such effect. The very purpose of the trust agreement was to carry out the intentions of the trustees of the loan association, of which appellant was well aware. He knew that it was for the protection of the share holders of the association that the trust agreement was to be executed; but the fact that the formal instrument was not executed until a year later does not justify his assertion that he was protected by the bare language of the trust agreement. It is not like a case between the parties to a written contract, on which one party or the other attempts to vary or contradict its terms when

the contract needs no interpretation in itself. In this case, the state and the public were parties directly interested in the whole transaction involving the loan association, its directors and officers, and appellant.

It must be remembered that all the property and the proceeds thereof were transferred to appellant as a trustee. He therefore held the property and the proceeds thereof in a fiduciary capacity. In order to show the extent of the knowledge of appellant as to what Linden and Campbell were doing with the loan association's funds, it was perfectly competent to show his knowledge a year before the formal trust instrument was executed as to the reasons therefor. Hence, there was no error in allowing the admission of such evidence.

It is next complained that the court erred in admitting the evidence of other matters not involved in the indictment, all of which was prejudicial to appellant, as follows: that the radio company was then indebted to the loan association in a sum of $27,800; that Linden had gone to Olympia to see appellant before the meeting in October, 1926, a year before the agreement was drawn; that further advances were made to the radio corporation by the loan association both before and after the agreement; that Linden had, even before the meeting of 1926, put loan association money into an oil venture; that a suspense account was opened up in the association at appellant's suggestion; that loan cards showing advances were shown to appellant, delivered to him and later were not found; that appellant had taken the resignation of the members of the board; that appellant was thereafter running the association; that other checks had been received from the Anderson Estate by appellant and turned over to Mrs. Linden; that Linden had been refused further advances out of the association funds

before he secured the $9,575.01 from appellant; that the loan association was paying taxes and payments on the contract of the home of Linden at Lake Forest Park.

Again, bearing in mind that appellant was in possession and control of a large amount of property and funds for the benefit of the other share holders of the loan association, any diversion of funds by the officers of the loan association with the knowledge of appellant constituted an acquiescence therein. It is impossible to analyze and detail all the facts referred to in the eleven matters set forth under this complaint within the proper limits in an opinion in this case. Suffice it to say, that much of it was introduced by the state and admitted by the trial court on the theory that, when there is a fiduciary relationship, as here, and the charge of conversion with the intent to deprive and defraud the beneficiary and owner of the property, all the circumstances and the relationship between the parties are admissible.

"The gist of the offense of larceny by embezzlement is the intent of the party charged to deprive or defraud the owner by withholding or appropriating his property. Any fact tending to prove or disprove that intent is properly admissible in evidence. The rule is stated in 15 Cyc. 529, as follows:

" 'Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other hand to show the *bona fides* of the accused.' " *State v. Sullivan,* 129 Wash. 42, 224 Pac. 586.

Compare *State v. Larson,* 123 Wash. 21, 211 Pac. 885, and *State v. Williams,* 163 Wash. 419, 1 P. (2d) 307.

The fact that such evidence may have incidentally had a tendency to prove that appellant had violated his duties as state supervisor of savings and loan associations, or was incompetent, or was responsible for conditions which resulted in the failure of the loan association, as being prejudicial to appellant, is unfortunate, but inescapable. The more competent such accused is in the duties of the position, the more responsible he is for the valid performance of such duties so as to prevent the conversion and misappropriation of funds belonging to large numbers of share holders. Knowing the facts as he did, imposed a greater fiduciary responsibility upon appellant. The relationship of the parties to a transaction and all the circumstances bearing upon the transaction are admissible for the purposes of showing intent. *State v. Sullivan, supra.* See, also, *State v. Linden, supra.*

■ Appellant next complains that the court erred in not dismissing the case at the close of the state's evidence, or at least have removed from the jury's consideration everything except the item of $9,575.01.

The admissions of appellant that he had secreted at least $2,600 which had been deposited in the name of himself and wife in a Tacoma savings and loan association and given to his wife, even though he made or offered restitution after the prosecution had been instituted against him, were sufficient to sustain a conviction of the charge under our statute, by the jury.

Nor does restitution after prosecution for grand larceny abate or bar the prosecution. It is not a defense to such a prosecution. *State v. Larson, supra; State v. Adams,* 144 Wash. 363, 258 Pac. 23; *State v. Clamp,* 164 Wash. 653, 3 P. (2d) 1096; *State v. Williams, supra.*

■ Appellant complains of error in the giving of an instruction to the jury to the effect that income or

dividends on the stock listed and pledged with him were required to be held, since the agreement was silent on that phase. It is true the trust agreement made no mention of dividends, or liquidating payments, or of the disposition to be made of income from the pledged securities. We find it stated as the general rule that a pledgee must account to the pledgor for all the income, profits and advantages derived by him from the pledged property. Such profits or income should be applied first to the payment of the interest on the debt, then to the principal, and any surplus remaining after all proper payments to the pledgee, including expenses, is held for the pledgor. 49 C. J. 944. There was no error in the instruction.

The final contention of appellant is that the court erred in denying his motion for a new trial. This contention is based partly upon the affidavits of certain jurors and partly upon the recommendation for leniency made by the jurors. The affidavits of the jurors relate to matters which inhered in the verdict and cannot be impeached by affidavits of jurors.

The recommendation for leniency was merely surplusage, and a matter which appealed only to the discretion of the trial court. *State v. Arata,* 56 Wash. 185, 105 Pac. 227. See, also, *State v. Gay,* 82 Wash. 423, 144 Pac. 711.

We conclude that there was ample and competent evidence for the jury to consider under proper submission by the trial court, that the motion for a new trial was properly denied, and that the verdict and judgment must stand affirmed.

TOLMAN, MITCHELL, PARKER, and MILLARD, JJ., concur.